UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SHELDON R. SCHEEL,

      Petitioner,

v.                                            Case No. 15-cv-850-pp

WARDEN MICHAEL MEISNER,

      Respondent.

**ORDER SCREENING §2254 *HABEAS CORPUS* PETITION (DKT. NO. 1), ORDERING THE RESPONDENT TO ANSWER OR OTHERWISE RESPOND, AND DENYING WITHOUT PREJUDICE THE PETITIONER'S REQUEST TO APPOINT COUNSEL (DKT. NO. 1 AT 12)**

      On July 14, 2015, petitioner Sheldon R. Scheel filed a petition for a writ of *habeas corpus* pursuant to 28 U.S.C. §2254. Dkt. No. 1. He paid the $5.00 filing fee on August 3, 2015. Dkt. No. 3. The petitioner contends that the State violated his due process rights under Brady v. Maryland, 373 U.S. 83, 83 S. Ct 1194 (1963), by failing to produce exculpatory evidence before trial. Dkt. No. 1, at 6-7. He seeks a new trial, or in the alternative, an order vacating his conviction and entering judgment of acquittal. Id. at 12. He also asks the court to appoint counsel to represent him. Id. Rule 4 of the Rules Governing §2254 Proceedings says:

> If it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner. If the petition is not dismissed, the judge must order the respondent to file an answer, motion, or other response within a fixed time . . . .

1

The court has reviewed, or "screened," the petition to determine if it presents a cognizable constitutional or federal law claim that has been exhausted in the state court system. The court will allow the petitioner to proceed on the Brady claim discussed below.

**A.  The Court Will Allow The Petitioner To Proceed On His Claim that He Was Denied Access To Exculpatory Evidence In Violation Of *Brady v. Maryland.***

   1.   *Procedural History*

The petitioner was convicted by a jury in the Circuit Court of Winnebago County, Wisconsin, on one count of possession of a firearm by a felon and one count of pointing a firearm at another, along with three counts of bail jumping (which are not at issue in this petition). Dkt. No. 1, at 2. He was convicted on February 19, 2008 and sentenced on August 14, 2008. Id.

Somehow, he later found in the Neenah Police Department's file a crime laboratory report reflecting the results of DNA testing on the gun that the petitioner allegedly possessed and pointed at another person. Id. at 6. The report concluded that (1) an insufficient amount of DNA was detected from the trigger of the gun to allow for testing, (2) no DNA profile could be obtained from the front grip of the gun, and (3) the DNA profile detected from the left grip of the gun was consistent with being a mixture of DNA from at least three people, and "Scheel was eliminated as a possible contributor to the DNA mixture detected from the swab of the left grip." Dkt. No. 1-1, at 1-2.

Three years after his sentencing, the petitioner filed a post-conviction motion in the circuit court under Wis. Stat. §974.06. State v. Scheel, 2013 WI

2

App 30, ¶4, 346 Wis. 2d 279, 827 N.W.2d 929 (Ct. App. 2013) (Scheel I). He alleged that the police and prosecutor had engaged in misconduct by withholding the laboratory report.[1] The petitioner also alleged that his attorney (Daniel Muza of Oshkosh, dkt. no. 1 at 11) had rendered ineffective assistance at trial for a number of reasons, including that his attorney "failed to present favorable DNA evidence at trial (i.e., the laboratory report described above)." Id. at ¶19. The circuit court denied the petitioner's §974.06 motion in its entirety, without an evidentiary hearing, and denied his motion for reconsideration too. Id. at ¶1. The petitioner appealed.

The Wisconsin Court of Appeals decided that the circuit court was correct to deny the petitioner's claims of prosecutorial and police misconduct without an evidentiary hearing. Id., ¶2. That court noted that the §974.06 motion:

> does not allege that the prosecutor failed to disclose the DNA test results prior to that date. Indeed, at sentencing, defense counsel noted that Scheel's DNA was not found on the gun. If the DNA test results had been disclosed to defense only after trial and before sentencing, defense counsel presumably would have brought that to the court's attention.

Id., ¶9. Based on defense counsel's statements at sentencing, the court of appeals appears to have inferred that the DNA evidence had been disclosed to counsel before trial. (The court will discuss below why it appears that this

---

[1] The Wisconsin Court of Appeals appears to have interpreted the petitioner's claim to be that the prosecutor did not disclose the DNA evidence to the petitioner's trial counsel at that time he was required to do so before trial, not that the prosecutor never disclosed the DNA evidence at all. See Scheel I, ¶¶8-9.

3

inference was incorrect, and that the State had not disclosed the DNA evidence to the defense.)

The court of appeals then addressed the petitioner's claims of ineffective assistance of counsel. The court concluded that the circuit court correctly denied each such claim without an evidentiary hearing except one—his claim "that he was denied effective assistance of counsel when his trial counsel failed to present favorable DNA evidence at trial . . . ." Id., ¶19. The circuit court "summarily denied this claim on the ground that the information was already known to the jury," which, the court held, was error because "the DNA test results were not known to the jury, as they were neither introduced nor admitted as evidence." Id., ¶¶19-20. Again, the court of appeals apparently thought that the petitioner's attorney, Attorney Muza, knew about the DNA evidence and elected not to introduce it at trial. See id., ¶20. So, the court of appeals concluded that the petitioner's §974.06 motion "allege[d] sufficient facts that, if true, would entitle him to relief on his claim of ineffective assistance of counsel," and reversed and remanded for an evidentiary hearing on that claim. Id.

At the evidentiary hearing, "the State stipulated, for purposes of the hearing, that Muza [petitioner's trial counsel] was **not** made aware of the DNA evidence." State v. Scheel, 2015 WI App 20, ¶4, 360 Wis. 2d 490, 864 N.W.2d 120 (Ct. App. 2015) (Scheel II) (emphasis added). The petitioner's attorney had "received a report regarding fingerprint evidence prepared by the state crime lab prior to trial," but not the DNA evidence despite having "made several

4

requests to the State prior to trial for any other crime lab evidence." Id. Given that turn of events, the circuit court "noted that the inquiry was not so much whether Muza was ineffective for failing to present the DNA evidence, but whether the prosecutor had had the evidence but failed to disclose it." Id., ¶6. Shifting to the prejudice inquiry, the circuit court determined that the evidence against the petitioner was "overwhelming" and the DNA evidence would not have changed the result of the trial even if it had been presented." Id. The circuit court denied the petitioner's motion.

The petitioner did not appeal the circuit court's decision to the court of appeals. Instead, about two months later, he filed a new §974.06 motion in the circuit court, alleging that the State's failure to disclose the DNA test report violated his due process rights under Brady v. Maryland, 373 U.S. 83, 83 S. Ct 1194 (1963).

The circuit court summarily dismissed the petitioner's new §974.06 motion for the reasons set forth in its November 28, 2011 order and at the August 7, 2013 evidentiary hearing. Scheel II, ¶7; Dkt. No. 1-3, at 1. The petitioner appealed the circuit court's denial to the court of appeals. That court affirmed, concluding that "it was [the petitioner's] obligation" to appeal the circuit court's prior order and that, because he did not, "he forfeited the argument on appeal." Scheel II, ¶7. The Wisconsin Supreme Court denied review.

In his federal *habeas* petition, the petitioner explains that he did not appeal the circuit court's prior order because the evidentiary hearing "was held

to decide the Ineffective Assistance of Counsel issue only," and that he could not present his Brady claim at the time of his initial postconviction motion because "it was not yet discovered."² Dkt. No. 1, at 7. He argues that the DNA test report "conclusively removes any possibility that he possessed the gun[, and] is without question exculpatory and crucial to Scheel's defense." Id. He contends that "[t]he undisputed fact that the State did possess this evidence and did not provide it to the defense clearly constitutes a federal issue warranting this Court's involvement." Id.

    2.    *Law Regarding Exhaustion of Remedies and Procedural Default*

When screening a petition, the court must determine whether the petitioner has "exhausted" all of his state-court remedies as to each claim contained in the petition. A district judge cannot consider the merits of a petitioner's *habeas* argument "unless the state courts have had a full and fair opportunity to review them." Farrell v. Lane, 939 F.2d 409, 410 (7th Cir. 1991). So, before a federal judge can review a *habeas* petitioner's claims on their merits, the petitioner first must have appealed the issue all the way up to the highest court in the state for a ruling on the merits. Lieberman v. Thomas, 505 F.3d 665, 669 (7th Cir. 2007) (citations omitted). In this case, the petitioner unsuccessfully presented his Brady claim to all three levels of the Wisconsin state courts before filing his §2254 petition.

---

² As discussed in later in this order, the petitioner's first §974.06 motion does not allege that the State never made the petitioner's lawyer aware of the DNA evidence, as it stipulated at the evidentiary hearing. As the court of appeals wrote, the petitioner's "motion does not allege that the prosecutor failed to disclose the DNA test results prior to" the date of trial. Scheel I, ¶9.

6

The court next reviews the petition under Rule 4 to determine whether the petitioner has procedurally defaulted on any of his claims. Even though a constitutional claim in a federal *habeas* petition has been exhausted, the court is still barred from considering the claim if it has been procedurally defaulted by the petitioner. See Mahaffey v. Schomig, 294 F.3d 907, 915 (7th Cir. 2002) (citing Boerckel v. O'Sullivan, 135 F.3d 1194, 1196–97 (7th Cir. 1998). A state prisoner procedurally defaults on a constitutional claim in a *habeas* petition when he fails to raise the claim in the state's highest court in a timely fashion or in the manner prescribed by state law. See O'Sullivan, 526 U.S. at 848; Thomas v. McCaughtry, 201 F.3d 995, 1000 (7th Cir. 2000).

Based on the record, the court cannot conclude that the petitioner has procedurally defaulted his Brady claim. Although the petitioner did not appeal the circuit court's August 7, 2013 order, the factual predicate for the Brady claim the petitioner raises in this case was not apparent until the State "stipulated" that it had not disclosed the DNA evidence to the defense. Once the State stipulated to that fact, the petitioner presented his Brady claim to each level of the Wisconsin state court system.

    3.    *The Substance of the Petitioner's Brady Claim*

In Brady v. Maryland, 373 U.S. 83, 83 S. Ct 1194 (1963), the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87. The court in Brady explained: "[t]he principle . . . is

7

not punishment of society for misdeeds of a prosecutor but avoidance of an unfair trial to the accused. Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly." Id. In this case, the petitioner contends that the DNA report was evidence favorable to him, and that the State's failure to disclose it to his trial counsel violated his constitutional due process right to a fair trial under Brady. The court concludes that the petitioner's allegations are sufficient to raise a cognizable due process claim.

Because the court finds that the petition sets forth a cognizable constitutional claim, which the petitioner exhausted in the state courts, and because at this time, the court cannot conclude that it plainly appears from the petition and attachments that the petitioner is not entitled to relief in this court, the court will allow the petitioner to proceed on his Brady due process claim, and will order the State to respond to the petition.

**B.    The Court Denies Without Prejudice The Petitioner's Request To Appoint Counsel.**

The Criminal Justice Act allows a court to appoint counsel for a person seeking relief under §2254 if "the court determines that the interests of justice so require" and if the person is "financially eligible." 18 U.S.C. §3006A(a)(2). Appointment of counsel for *habeas* petitioners is within the district court's discretion, and is governed by standards similar to those followed with plaintiffs proceeding *in forma pauperis* in civil cases. Wilson v. Duckworth, 716 F.2d 415, 418 (7th Cir. 1983); Jackson v. Cnty. of McLean, 953 F.2d 1070, 1071 (7th Cir. 1992). The Seventh Circuit has found that "due process does not

8

require appointment of counsel for indigent prisoners pursuing state postconviction remedies or federal habeas relief." Pruitt v. Mote, 503 F.3d 647, 657 (7th Cir. 2007). While "an indigent civil litigant may ask the district court to request an attorney to represent him *pro bono publico*," "no constitutional or statutory right to court-appointed counsel" exists "in federal civil litigation." Id. at 649.

To determine whether it will appoint counsel in a *habeas* case, the court asks: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate himself?" Id. at 654. The Seventh Circuit has not clearly defined the phrase "reasonable attempt to obtain counsel," but it has affirmed one court's requirement that the litigant provide the names and addresses of at least three attorneys that the litigant contacted and who turned him down. Romanelli v. Suilene, 615 F.3d 847, 852 (7th Cir. 2010).

After a litigant has unsuccessfully tried to find a lawyer, or shows that he was effectively prevented from trying to find a lawyer, the court must decide the next question: is the case so complicated, both factually and legally, that the litigant does not appear able to handle the case himself? Id., 503 F.3d at 654 (citing Farmer v. Hass, 990 F.2d 319, 322 (7th Cir. 1993). The majority of people who file *habeas* petitions are incarcerated, do not have very extensive educations, are not lawyers, and don't have money to hire lawyers. The majority of them ask the court to appoint lawyers to represent them. The court

cannot appoint a lawyer for every person who asks, because the court's resources are limited. That is why the court requires a litigant representing himself to explain why his particular case is so difficult or complex that he cannot present it himself. Third, the court must consider whether, if the litigant is unable to handle the case himself, the presence of a lawyer likely make a difference in the outcome of the case. Id.

The petition contains a brief request that the court appoint counsel. The petition does not state whether the petitioner has made efforts to contact lawyers to represent him in this case. Thus, the petitioner has not met the first Pruitt requirement—that he show that he has made reasonable attempts to find his own lawyer and has been unsuccessful. Further, at this point, the court cannot conclude that the case is so complex that the petitioner cannot represent himself. The petition contains numerous references to the law (with citations), and clearly articulates the relief that the petitioner is seeking and the basis for his Brady claim. The court's review of the petition indicates that the petitioner is competent to represent himself for now. If the proceedings become more complicated, or if a hearing becomes necessary later in the case, the petitioner may review his request for appointment of counsel.

For the above reasons, the court **ORDERS** that the petitioner may proceed on his Brady claim.

The court **ORDERS** that within sixty days of the date of this order, the respondent shall **ANSWER OR OTHERWISE RESPOND** to the petition,

Case 2:15-cv-00850-DEJ   Filed 12/02/15   Page 10 of 12   Document 4

complying with Rule 5 of the Rules Governing §2254 Cases, and showing cause, if any, why the writ should not issue.

The court **ORDERS** that the parties must comply with the following schedule for filing briefs on the merits of the petitioner's claims:

(1) the petitioner has **forty-five (45) days** following after the respondent files his answer to file his brief in support of his petition;

(2) the respondent has **forty-five (45) days** after the petitioner files his initial brief to file the respondent's brief in opposition; and

(3) the petitioner has **thirty (30) days** after the respondent files his opposition brief to file a reply brief, if the petitioner chooses to file such a brief.

If, instead of filing an answer, the respondent files a dispositive motion, the respondent must include a brief and other relevant materials in support of the motion. The petitioner then must file a brief in opposition to that motion within **forty-five (45) days** of the date the respondent files the motion. If the respondent chooses to file a reply brief, he must do so within **thirty (30) days** of the date the petitioner files the opposition brief.

Pursuant to Civil Local Rule 7(f), briefs in support of or in opposition to the habeas petition and any dispositive motions shall not exceed **thirty (30)** pages, and reply briefs may not exceed **fifteen (15)** pages, not counting any statements of facts, exhibits and affidavits.

The court **DENIES WITHOUT PREJUDICE** the petitioner's request to appoint counsel.

Pursuant to the Memorandum of Understanding between the Attorney General and this court, the court will send a copy of the petition and this order to the Attorney General for the State of Wisconsin and to the Warden of Redgranite Correctional Institution.

Dated in Milwaukee, Wisconsin this 2nd day of December, 2015.

BY THE COURT:

_____
HON. PAMELA PEPPER
United States District Judge

12

Case 2:15-cv-00850-DEJ   Filed 12/02/15   Page 12 of 12   Document 4